5-220-187 consolidated with 5-220-597 for oral argument only. The people of the state of Illinois, Appellant v. David I. Cates, appellee. Counsel, if you're ready to proceed. Yes, I'm Luke McNeil for the people of the state of Illinois. As the video evidence and testimony of Officer Feekes showed, this was a routine DUI where an inexperienced officer, or at least an officer inexperienced with the statutes in Illinois, accidentally writes the wrong statutory subsection into his computer, which autofills the rest of it being the wrong statutory subsection. This was quickly corrected, resulting in no prejudice whatsoever to defendant and sufficiently apprising him of the charges against him. Counsel, it was amended by the officer, not by the state, not by the prosecutor, and not by the judge. Isn't that a problem? I would submit that it isn't because of the leeway that should be given to officers. I'm presuming that typos are done pretty often with uniformed traffic tickets, and that is what happened here, and this was quickly corrected before even the Secretary of State had it on file. The people or the Fairview Heights Police Department or Officer Feekes shouldn't be penalized for amending the charging instrument, if you want to call it that, amending the uniformed traffic ticket before it was required, giving defendant even more time and less chance of prejudice than would be required. This is not... Wasn't there a discovery violation involving the amended ticket? Was the defendant provided with a copy of the amended ticket? Yes, I think, yes, he was provided with a copy of the amended ticket. And the copy of the original ticket, because both of them are in the record, the copy of the original ticket, defendant had a copy of that as well from the night of the incident. I would submit that the trial court in this case was sort of operating from a conclusion and going backwards to dismiss this case and to rescind the statutory summary suspension. Basically, making a mountain out of a molehill as to this so-called discovery violation, which really was a typographical error as for the ticket. But first, I want to discuss Officer Feekes' credibility and the probable cause, which was the findings by the trial court as to Officer Feekes' credibility were manifestly erroneous, even when looking at just the cold record, which is what we have now. The trial court found that the video evidence did not corroborate Officer Feekes' testimony and was inconsistent when, in fact, when looking at the video evidence and Officer Feekes' testimony, these corroborated each other. The trial court's finding was exactly incorrect. And the trial court also parsed out... Counsel, did you see it? I didn't find clear support for the officer's testimony in the video. I mean, I didn't find that the officer's testimony was contradicted by the video, but it certainly wasn't supported by the video. Well, we have the officer confirming multiple signs of intoxication, and he's reporting to a scene from a 9-1-1 dispatch call an extremely reliable 9-1-1 tip that a person was passed out in the driver's seat in an active intersection and appeared intoxicated. How does a 9-1-1 tip become extremely reliable? For multiple reasons here. One, it was dialed to 9-1-1 instead of a regular police number or someone's cell phone or something like that. The case law I cited in my briefs shows that due to the risk of criminal charges for lying, calling 9-1-1, this increases the reliability. Two, this was extremely close in time to the time that Officer Feekes got there. In fact, this tipster was narrating the events in real time. They observed defendant passed out in the car and observed him appearing intoxicated. And then we have the fact that this witness was not motivated. There's nothing to suggest that there's an ax to grind with defendant or that they knew defendant at all. And this person, it's a reasonable inference to make that this person was at the scene in the video. There's a citizen there pointing out defendant to the police officers there. This is not a person that was afraid to be identified, which is another indicia of reliability as to a 9-1-1 call. When the officer appeared, was the defendant still in the car or had he already exited the vehicle? To me, it seems that he was sitting in the car. But we don't know that for sure because the video only has audio during the defendant. The only time you see defendant is when he's walking to the police car. So we don't know if he's standing or sitting next to his car. But we do know that he was identified. And there's really no, it was not a dispute that defendant was the driver of this car at either the petition to rescind hearing or the motion to dismiss, which was really a formality. So defendant, Officer Feeks gets to the scene with that information. A reasonable police officer would assume a DUI at that point. And I would submit and case law shows that this extremely reliable tip is enough to satisfy probable cause even before Feeks personally observes multiple indications of defendant's intoxication. Which were glassy eyes, slurred speech, which both of them were communicated to defendant as well as communicated independently to the other two officers away from defendant at the scene. The audio and video corroborates that. And Feeks observed an odor of alcoholic beverage. Now, of course, defendant understandably makes a big to do that this was not told to defendant. I would submit that there is no requirement that defendant has to know every single itemized clue for intoxication. But also in this context, it would have been repetitive to even say that defendant admits to drinking alcohol that night. So, of course, it would be presumed that there's an odor of alcoholic beverage on this person that does not need to be communicated to him. It's also true that Feeks did not do any field sobriety tests. His explanation for that was that it was winter and it was 13 degrees outside. That's perfectly understandable, especially when he already had. At that point, the requisite probable cause with the 911 call. Showing someone who passed out appearing intoxicated. Personally observing multiple signs of intoxication defendant admitting he drank alcohol that night along with defendants nonsensical answers, which we'll get to. In a minute, fix clearly had the requisite probable cause and I would submit that none of this was inconsistent with the video. It was corroborated by the video and the 911 call. At least the dispatch of the 911 call to fix. The trial court seemed to operate from the assumption that. Because fix didn't personally observe defendant driving, it was impossible to arrest him. For DUI, of course, this position is absurd. How does how does the trial court seem to operate from that assumption? You're attributing to the trial court something that I didn't see in the record. Was there something in the record that you can point to? Um, in the report that, uh. The trial court, the, in the petition for. Resend the order on motion to rescind statutory summary suspension. Um, well, I don't want to. As far as I remember, there was a suggestion I might be. Inflating that with the oral arguments made. At the petition to rescind summary suspension in the trial court, accepting those oral arguments. But, uh, that was clearly a stance that the. A defendant took at the at the petition to rescind hearing. And that the trial court accepted, um. And I would submit that that is is clearly wrong as as. Pointed out in the case last night in my brief, um. Clearly, the trial court's testimony of finding the testimony was inconsistent. And not corroborated by the video was exactly incorrect. That was manifestly erroneous and, um. We will talk about the defendant's answers now. Fixes exchange with defendant. Defendant gave multiple nonsensical answers. Suggesting intoxication defendant states multiple times. He has no idea what's going on. He denies passing out quote as far as I know. And he admits to drinking alcohol. Doesn't presume that the, that the. That the court is going to accept his testimony. Because because the court clearly said that. That they found the testimony, his testimony. Incredible that they didn't accept his testimony. Well, this was just I. This was the video and the video is the audio. Okay, this was not in dispute because this was the audio recording. I would submit that that corroborates. Fixes observation of defendants and intoxication. But the point remains that later defendant. In the process of being arrested. Completely changes course and says, I wasn't even driving. This baffled officer fakes and it says, why would you just tell me that now? Why are there 2 cars here with you and your friend? Both having cars and no other people around. This clearly show consciousness of guilt. This court can apply that. I mean, I don't know how much this will go to the probable cause determination. Because he was in the process of being arrested at that time. But this was a clear indication of his consciousness of guilt. At that time, the trial court completely ignored that as well. But mainly the trial court. Did not consider the totality of the circumstances. It did not consider the position of a reasonable officer in fixes position at that time. It, it, it completely ignored this 911 call. Where fix is already on on point. He has a tip that this person is intoxicated that this person was. Intoxicated enough to be passed out in the middle of the road. That clearly has to go. To the analysis of fixes determination of probable cause. To arrest defendant for at that point, and the trial court completely failed to do that. Moving on to the amendment of the charging document. Which is a much more official way. Of saying that a typo on a traffic ticket. That was quickly corrected, which was what happened here. Like I said, defendant attempted to make a mountain out of a molehill. The trial court bought this hook line and sinker. Fix testified he was an officer new to Illinois. He had written 5 at that point. It sounds like most of them were during his training period. The only other, he wrote was under his training officer. And it's unclear how much of that he actually drafted himself. Anyway, there was a computer program that automatically fill that out. He testified as to that. The reasonable inference to make from this is that. He accidentally puts a 5. It should have been a to the. Computer fills that out with alcohol drugs. Intoxicate intoxicating compound. Language more experienced officer notices this. Make places a 2 ticket and fix his mailbox. A day later. Fix realizes his mistake at that point. And sends that ticket to the secretary of state. As Duncan cited in my brief. Points out relaxing the rigidity of the criminal law. The traffic offense context does not and duly and friends upon the rights of the individual. The traffic traffic complaint is not void. If it charges a defendant with driving under the influence. That is a yellow light, correct? Correct. Without specifying of alcohol. So long as the defendant otherwise knows prior to trial. E.g. through a bill of particulars or discovery. The ticket refers to alcohol such ticket. Sufficiently appraises the defendant the charges so that he can prepare a defense. Clearly defendant was sufficiently apprised here. Defendant included this very argument in his pre trial motion. There's absolutely no discovery problem here. Because defendant is not prejudiced whatsoever. Fix testified consistent with this. He testified he never he did not believe defendant was under the influence of drugs. He instead believed defendant was under the influence of alcohol. And that this was a mistake. That was corroborated by both the video and the 911 call. There's nothing in his audio. Even when he's speaking confidentially to the other officers. That suggests defendant was under the influence of drugs instead of alcohol. The bottom line is that this typo on the ticket was discovered quickly. Remedied by the Fairview Heights Police Department and officer fix. Defendant was given a copy of the correct ticket. With plenty of time to apprise him of the charges. The Supreme Court said Illinois Supreme Court said decades ago in Tamman. That there should be liability or leeway. For arresting officers because they are not state's attorneys. They're police officers and they're generally written. Tickets are generally written at the time the offense is committed. So basically what we are doing is. Having police officers draft these quote unquote charging instruments. In real time on the side of the road. And they have to be up to the standards of what a state's attorney can do. In a leisurely time later with all the evidence in front of them. If the trial court's position is adopted. These officers will be prohibited from ever making a typo. On a uniform traffic ticket again. And I see my time is up. Thank the court. We'll have time for rebuttal counsel. Yes, may it please the court. I have to take issue with Mr McNeil. Uh, with regard to this being a typo. The evidence would clearly show that this was done intentionally. Changing it to an A2 by a supervising patrol officer. By the name of a Sergeant Mason. And the original ticket that was issued. Also concluded a warning to motorists that had A5. It also had a bond with A5. This was not done by mistake. This was done because in my view. The original sworn report had nothing about the smell of alcohol. Or swaying or anything like that. The law enforcement report. And that's because I believe when Feeks got there. He didn't smell alcohol. He didn't see swaying. So he had he opted for under the influence of drugs. That's my explanation of it. I could be wrong. But other things corroborate that. Now, I don't want to belabor the point. But Duncans. People versus Duncans is not dispositive of what happened in this case. The state tries to pawn it off as that. But it's not. If you look at people versus Duncans. The amendment that was done to the DUI charge. Was done upon a motion to the court. By the state's attorney. And that is totally compliant with 111-5. Which was violated here. By the Fairview Heights Police Department. It was a clear violation. When Sergeant Mason went into the computer system. At the Fairview Heights Police Station. And pulled the ticket that was issued by FIGS under 5 of A-5. And then he wrote out. Sergeant Mason. But wasn't at the scene at all. Wrote out a new charge under A-2. And he handed it over to Patrolman FIGS. And says file this the next time you're working. And in addition. By the way. I think what you ought to do is write a second sworn. Law enforcement report to support my charge. And that's what happened. And that's undisputed what happened. And that's not consistent with the law. 111-5 was passed to avoid that very thing. To avoid going into computer systems at police departments. And making tickets disappear. In this particular case. They made one disappear. And they created another one. Because it fit and suited their idea. Of what they would have a better chance of convicting on. And by the way. That was done when I say they. It was a committee of the Fairview Heights Police Department. You can see that. Now who gets charged with a DUI. Gets subjected to a committee review. Of what kind of charge should be filed. And if they look at it. And they say. Well gosh. We don't think there's probable cause for A-2 here. Or for A-5 here. Let's charge A-2. I would submit. That that's because. As Mason stated. To Officer Figgs. This could be a high profile case. So we've got to take care. And get a charge derived. We don't want to have a no probable cause finding here. And I think you get a committee. When your mom's a farmer. Candidate for the Supreme Court. And on the appellate court. I don't know what else would make David Cates. A high profile case. In any event. Donkus is not. Is not dispositive. And it's not even support. For what Sergeant Mason did here. As a matter of fact. Somebody ought to look into what Sergeant Mason did here. In my view. In any event. Let me turn to probable cause. I think subsumed. In the idea of probable cause. Is also the issue of Figgs's credibility. He was the only witness. At the suspension hearing. And the state didn't call any witnesses. At the motion on the. On the motion to dismiss. They stood on what Figgs testified to. At the suspension hearing. And. He wasn't very credible. At least. Judge Purchase. Who's a conscientious judge. A hardworking judge. She. In her discretion. Didn't think he was very credible. And let me tell you why. I don't think it's unreasonable. As a matter of fact. I think she fits. The abuse of discretion standard. In terms of determining credibility. At Figgs. In the sense that. I think. Clearly. Reasonable jurists would agree with her. If they looked at the circumstances. Let's let's start with this. The first two officers. Fairview Heights officers. At the scene. Were never called as witnesses. In this case. They both had dash cams. And videos on them. But those have disappeared. And it disappeared. At the times of the suspension. Now what kind of a coincidence. Is that where two officers. Are first on the scene. And they've got these recording devices. And both of the devices fail. Well the state has never explained it. They don't explain it. Failure of the equipment. But they don't explain it at all. Why we don't have those videos. And I would submit. The inference that. Judge Purchase. Drew. Is a reasonable one that. Well those would have been favorable to. The defendant. Oh and maybe. The audio tape. At the processing room. At the Fairview Heights police station. Would have been favorable. Because it's disappeared too. It's nowhere to be found. And Burgess and Klein. The first two officers at the scene. Didn't write reports. Or if they did. Their reports have disappeared too. So this is all falling down on fakes. Okay. We believe fakes. Nothing that the state has done. Attempted to corroborate them. And I submit to you. This most significant thing. Is the motion to dismiss. The judge had already made a decision. And told the state. I don't think he's persuasive. But they had two officers. That were first on the scene. And you think they'd call them. At the motion to dismiss. No. They stood on. Fixes testimony. At the suspension hearing. No. It's mystifying what happened. In this case. How the states behaved. In this case. On a number of fronts. There are other things. In terms of. Evidence. They've. They've never explained. Never even tried to explain. Where it went. I don't know where it went. That's what Mr. Bernard said. At the hearing. We don't know. We just don't know. And there are things. Just falling around. And disappearing. And they don't know. Where it went. But they want. To go forward. Against the defendant. Without the judge. Drawing inferences from that. There. Maybe. Maybe the defendant. Really wasn't that intoxicated. Maybe he didn't have. The smell of alcohol. Which was suggested to fix. To put in his second sworn report. It wasn't in his first sworn report. And he submitted under oath. When he got on the stand. That he lied on his report. Now what kind of credibility. Can you give an officer who says. Hey by the way. You know. Believe me. But listen. I lied on that first report. Incredible. Just absolutely incredible stuff. That the state's trying to. Put forward in this case. To support. The credibility of fakes. And to denigrate Judge Purchase. In her finding. That I'm not going to credit. This guy's testimony. Or the testimony of Fairview Heights. And the way this has been handled. Because they didn't handle the evidence. They had dash cams on. They had video cameras on. They had videotapes. In the processing room. And none of that's available. It's all gone. I think inferences. Can be drawn by the judge. And that those are reasonable inferences. For the judge to draw. In any event. I just don't think that. What Judge Purchase ruled. In this particular case. Was out in left field. I know in a vacuum. When the state comes in and says. Well he's passed out of the wheel. There's no evidence of that. He's passed out. There's an anonymous tip. Okay. There's no evidence that somebody. That was there in the videotape. Was the tipster. There's no evidence of that. And besides which. If we're talking about an anonymous tip. When Fuchs gets that information. If that's what he got from the dispatch. That gives him the right. To do an investigatory stop. For further investigation. But once he investigates. If he doesn't smell alcohol. He doesn't see swaying. He doesn't see clues. Dealing with intoxication. But and you've got the man on his feet. And talking to him. You know I don't. I don't blame David Case. For saying well I'm not sure. I know what's going on here. We don't know the reason why. He stopped driving the automobile. But there are a lot of reasons. I can think of. A lot of reasons. That I would stop driving a motor vehicle. If I had a stroke. Or I had a heart attack. Or I had other mental. Physical illness. That's that kind of thing can happen. But when Fuchs gets there. And he doesn't develop probable cause. He doesn't have alcohol. Smell of alcohol. Oh you know what? Sergeant Mason said. We got to have smell of alcohol. In this second sworn law enforcement report. We got to have swaying. These aren't things that Fuchs came up with. In his first sworn law enforcement report. None of it's in there. This is stuff that Sergeant Mason gave him. Suggesting to him. That he put in a second sworn report. To support Sergeant Mason's charge. Sergeant Mason who was never even at the scene. Is telling him what kind of clues. To put in to a report. I mean that's almost as bad. As going into the computer system. And pulling a ticket. And rewriting it. And making a new charge. That's not donkus. That's conduct consistent. With people that got criminally charged. Back in 1982. And what stemmed the creation of 111-5. Washington Park, Illinois. That's the police chief there. You know liked going into the computer system. And helping out his friends and councilmen. And all that kind of stuff. This was a statute that wasn't designed. To allow the state or police officers. To go into their computer systems. And increase charges. Or change charges. And keep them intact. But manipulate them. So there was a better chance of finding probable cause. Or a better chance of convicting. It wasn't designed for that. It was designed to prevent police officers. From fixing tickets. Can you move on to the motion to dismiss please? Pardon me? Can you move on to the motion to dismiss please? Because I'm afraid we're not going to get to that. If we belabor this. The motion to dismiss. Oh god yeah. I haven't even talked about. Well but that's subsumed in the probable cause issue really. Well case law says the probable cause. The testimony. The evidence on a motion to dismiss. Is different from the evidence on the statutory summary suspension. The burden of proof is different. Well that's true. That's true. But the determination of whether there was probable cause. At the motion to dismiss. When they were standing on Feeks's testimony. I think becomes more or less subsumed. I don't think that the judge talked very much in the record. About granting the motion to dismiss. And by the way if you look at the record. The state invited her to dismiss the charge. Mr. Bernard invited this dismissal. I mean she's sitting there and he's saying. Well you know based on what Feeks testified to. And your ruling on the summary suspension. I think you ought to file. You ought to grant the motion to dismiss. And so there's not a lot in the record. About her findings on the motion to dismiss. She basically followed the lead of the state. And suggesting that she dismissed. Which is bizarre. Because they had the opportunity. To call the two first officers that were at the scene. She didn't like the testimony of Feeks. But now they had the chance to call the two officers. That were first on the scene. Whose dash cams and videos are gone. But they could have been called. And they could have testified. And they could have corroborated Feeks. And they could have been brought in. And made a stronger case to hold the motion to dismiss. But they didn't even.  They did just the opposite. Said go ahead dismiss the case. Let's see that your time is up. Thank you. Justice Devenport any questions? No. Any further questions? Justice Albrecht? No. Mr. Keene I'm looking at the transcript. Of the officer's testimony. And both of the sworn reports. So what is it and having difficulty. Getting an answer to this question. What is it that the officer observed. When he got to the scene. Personally observed. What did the officer observe? Personally observed yes. What did he see when he got out of his car. And was at the scene. Well he when when officer Feeks got out of the car. Yes the first two officers. When officer Feeks got out of the car. The defendant was already out of his car. And he was standing there. Talking right into the video. And the dash cam of officer Burgess. And they were both on their feet. And standing there talking to one another. And Burgess didn't issue any citation. And he didn't sit him down in a squat car. He just went on talking with him. And and that's what he saw. That's what Feeks saw when he got there. He saw a man that didn't look like. He was passed out on the wheel. From intoxication 10 minutes earlier. He just it wouldn't fit. The defendant was standing there talking. Consciously talking. Not swaying. And and Burgess was there talking to him. You've answered my question. Thank you. Okay. Thank you. McNeil. I take issue with the gross mischaracterization. Of the single email from from Mason to Feeks. There's no commands from Mason at all. The only reason he puts. Traditional intoxication clues in there. Is preceded by the words for example. He in fact states that. You're probably also. You would agree. If you compare the two. And I'm sorry. But I have to move them back and forth on my computer here. But the original. Swarm report. Rusty was discovered. Stopped in the traffic lane. And subsequently arrested for driving on the ambulance. Okay. He witnessed that he was. Stopped in the traffic plane from. The answer to my last. Rusty was located in the driver's seat. Prior to him exiting the vehicle. Did did officer Peaks see that? It's it's unclear which is. Whether he's talking about. The witnessing him exiting the driver's seat. In the road. Or whether he means he. The defendant exited the driver's seat. When he got there. Which is precisely. You would agree that this is a sworn report. It's it's just like testimony. That he made. Yes, I would. I would also say that there's no. Why he did not lie during his testimony. I'm not I'm not suggesting that at all. Defense counsel did. That's right. Certainly he could be subject. Cross examination based on what he said. In his original sworn report. As opposed to his amended to 1 report. Yes. And a judge could conclude. That his credibility was in question. Based on those inconsistencies. And those changes. I wouldn't say there's more. I wouldn't say they were inconsistencies. I'd say that they were just. There was just nothing in the probable cause. Section of the 1st report. I don't know if. I don't know if do you. Tickets and reports. In Missouri are different than in Illinois. I don't know why he didn't. He didn't flesh out the probable cause section. Which is exactly why. Officer Mason told him to. And that he checked the wrong. Statutory subsection out of 7. On the on the 1st ticket. I would submit. I'd ask this court taking defendant's position. Uh, our police officers prohibited. From making typos. On traffic tickets. Because it would seem that they are. Based on suggestion. It's not about the traffic ticket. It's about the swarm report. Which has much more. Significance than the traffic. Okay. And I would. And my response to that is that. The 1st 1 did not contain. Very much a detail as to. The observations officer feeks. Saw at the scene. But the video evidence. As well as his testimony. Corroborate that 2nd report. Defense counsel. Repeats ad nauseum that. There were no observations of intoxication. Officer feeks testified to the exact opposite. And completely ignores the fact that. Defendant admitted to drinking alcohol. That night. He wouldn't say how much he had. But he admitted to drinking alcohol. That night as to whether. Whether or what he passed out from. There's no explanation from defendant. As to why. He passed out instead. He said, I don't know. He passed out. Council the 911 call. That's evidence. It's not in evidence. Is it. The actual 911 call isn't. But the report that. Officer feeks was responding to. The dispatch that he was responding to is. And in that in that response. Is the the. I would say uncontested fact that this witness. Saw defendant. Passed out in the car in the middle of the road. We don't even know this witness's name. Correct. We do not. And we don't know whether the person. That was on the in the video. Is that witness? We don't for sure. I think I would submit. That's a reasonable inference to make. I don't know who else would be. Pointing out defendant. In that situation or pointing to. Where defendant is in that situation. It's late at night or at least. After dark and on a 13 degree night. I don't know what other reasonable inference. Can be made from that. The point being is that this was an extremely. Reliable tip that officer feeks was responding to. And that has to go into. The analysis of whether there was probable cause. Especially when combined with. The observation feeks had at the scene. And the credibility determinations. Finding otherwise. Were completely erroneous by the trial court. Now the trial court. This is what the trial court found. The trial court found. That the officer's statements at the scene. The original sworn report. And the amended sworn report. Were inconsistent with one another. Therefore the office. The court found that there was. That there were serious credibility issues. With officer feeks testimony. Officer feeks was the only witness. How is that an abuse of discretion. When the court finds that the officer's testimony. Was inconsistent and unpersuasive. And the officer was the only witness. Can I answer? I see I'm out of time. As the. As the justice had pointed out. That all of this is in the record. The 1st report and the 2nd report. There are no inconsistencies. There are simply additions. To the 2nd report. And the trial court's finding. Of these so-called inconsistencies. And again I would say that the 2nd report. Video and. Testimony of officer feeks. Were all consistent with each other. It would suggest to me that. This trial court had its mind made up. Before any evidence at the hearing. And I would ask this court to reverse. Unless there are other questions. There is. Thank you. Mr McNeil. Can I ask you to address. On the motion to dismiss. Kind of switch for me. The court basically states. That new arguments were raised. And that you conceded those arguments. Could you speak as to the issue. Of whether you felt any new issues. Were raised on the motion to dismiss. No issues were raised. And in fact. Defense counsel said. Prior to this. We're basically relying on our arguments. And on this court's finding. At the petition to rescind hearing. So the state. Of course did the same. The prosecutor did the same. It's a foregone conclusion. That this is going to be dismissed. I would say this is an odd procedural posture. That is kind of uncommon. For this motion to dismiss. To even be filed. But of course. If there's no probable cause. For defendant to be arrested. Then the charges are going to be. Dismissed as for the. Additional arguments. I think I refute those pretty well. In my reply brief. At the end. And I can go over them. If you want or. Thank you. Thank you. Justice Albrecht. Any other questions? No. I don't have any further. Gentlemen. Thank you very much. For your arguments here today. We're going to take this case. Under advisement. And issue a written opinion. In due course.